UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DWANE A. STEWART,

    Petitioner,

v.                                                  CASE NO. 6:11-cv-2053-Orl-36KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner Dwane A. Stewart initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 12). Petitioner filed a reply (Doc. No. 13) and two amended replies (Doc. Nos. 16 & 18).

Petitioner alleges four claims for relief in his habeas petition: (1) the trial court erred by denying his motion for judgment of acquittal; (2) the trial court erred when it gave an incomplete jury instruction on self defense; (3) the trial court's use of the "and/or" in the jury instructions negated his only defense; and (4) the trial court erred by admitting his statement at trial. For the following reasons, the Court finds that Petitioner is not entitled

to relief on his claims.

I.     *Procedural History*

Petitioner was charged with two counts of aggravated battery. After a jury trial, Petitioner was convicted as charged. The trial court sentenced Petitioner to a fifteen-year term of imprisonment for count one and to a fifteen-year term of probation for count two, to run consecutive to the term of imprisonment. Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam*. Petitioner petitioned the Supreme Court of Florida for discretionary review, however, the court dismissed the petition.

Petitioner filed a petition for writ of habeas corpus with the appellate court in which he alleged one ground of ineffective assistance of appellate counsel. The Fifth District Court of Appeal denied the petition without discussion. Petitioner subsequently filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The trial court held an evidentiary hearing on Petitioner's claims, after which it denied relief. The appellate court affirmed *per curiam*. The instant federal habeas corpus petition follows.

II.    *Legal Standards*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the

---

[1] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.  *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. Analysis

#### A. Claim One

Petitioner claims that the trial court erred by denying his motion for judgment of acquittal (Doc. No. 1 at 5). In support of this claim, Petitioner maintains that the State failed to rebut his claim of self defense. *Id.*

In Florida, the "purpose of a motion for judgment of acquittal is to test the legal sufficiency of the evidence presented by the [S]tate." *Harris v. State*, 954 So.2d 1260, 1261 (Fla. 5th DCA 2007) (citation omitted). When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 918 (11th Cir. 2009).

The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at 326; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).

"When a defendant claims self-defense, [h]e bears the burden of presenting a prima facie case of self-defense. Once [h]e does so, the burden shifts to the State to prove that the defendant did not act in self-defense beyond a reasonable doubt." *Leasure v. State*, 105 So. 3d 5, 13 (Fla. 2d DCA 2012) (citations omitted). Pursuant to section 776.012, Florida Statutes, a person is justified in the use of deadly force, and does not have a duty to retreat, if (1) he believes that such force is necessary to prevent imminent death or great bodily harm to himself or to prevent the imminent commission of a forcible felony; or (2) under those circumstances permitted pursuant to section 776.013. The trial court instructed the jury regarding section 776.012(1) (App. B at 568-70), however, the court did not instruct the jury regarding the circumstances contained in section 776.013, Florida Statutes.[3]

Petitioner testified that he was at victim Ernest Caissie's ("Caissie") home on October 11, 2006, with victim Stephen Miller ("Miller") because Petitioner and Miller were smoking crack together (App. B at 450).[4] Petitioner left to purchase more crack for Caissie, and upon returning, Caissie refused to pay Petitioner for the drugs. *Id.* at 451-52. Petitioner reached toward Caissie to retrieve the crack, and Caissie stabbed Petitioner's

---

[3] Petitioner argues in his second claim that the trial court erred by failing to instruct the jury regarding the circumstances contained in section 776.013. The Court will address that issue separately in claim two.

[4] Caissie died prior to trial, however, his death was unrelated to the instant crime.

hand. *Id.* at 452. Petitioner testified that he hit Caissie, and after Caissie attempted to stab him again, Petitioner pulled out his own knife and stabbed Caissie. *Id.* Petitioner admitted stabbing Caissie five or six times because Caissie would not stop trying to stab him. *Id.* at 453. Caissie then yelled for Miller, who came toward Petitioner and "jumped" on him. *Id.* at 454. Petitioner was unsure whether Miller had a knife, but he believed that Miller grabbed, pushed, and held him so that Caissie could stab him in the back; therefore, Petitioner stabbed Miller approximately four times to prevent this from occurring. *Id.* Petitioner then ran from Caissie's home. *Id.* at 456.

Petitioner presented a prima facie case of self defense because he testified that he stabbed Caissie and Miller because he was afraid he would be killed. Thus, the State then had the burden to prove that Petitioner did not act in self defense beyond a reasonable doubt. The State called Miller, who testified that he was asleep on Caissie's couch when he awoke to Caissie's screams. *Id.* at 275-76. Miller walked halfway down the hallway when he was attacked and stabbed by Petitioner. *Id.* at 276. Petitioner ran out the door, and Caissie called 911. *Id.* at 278. Miller testified that he did nothing to provoke Petitioner's attack; he did not have any weapons nor did he strike Petitioner. *Id.* at 290. Miller knew that Caissie had made an agreement with Petitioner earlier in the evening to loan Petitioner money in exchange for crack cocaine. *Id.* at 298.

In addition, the State played for the jury the 911 telephone call Caissie made in which Caissie stated that a black man stole $25 from him and stabbed him approximately six times. *Id.* at 256-57. The State also played Petitioner's recorded statement for the jury

in which he admitted that he stabbed the victims in order to obtain money or crack. *Id.* at 376-78, 400. Petitioner did not tell police that his actions were in self defense. *Id.* Petitioner attempted to explain his recorded statement by testifying that when he gave the statement he could not recall the events from the previous night, and therefore, he told the police what he thought they wanted to hear. *Id.* at 457. According to Petitioner, several days after his statement to police, Petitioner began to remember the incident more clearly. *Id.* at 449. Petitioner also admitted that he threw his bloody clothes in the trash. *Id.* at 442-43

The State presented evidence proving that Petitioner's actions were inconsistent with a claim of self defense. Therefore, the trial court properly denied Petitioner's motion for judgment of acquittal because the evidence was sufficient to allow the jury to reject Petitioner's version of events and reasonably infer that Petitioner stabbed the victims during his attempt to steal money or drugs. *See Stinson v. State*, 69 So. 3d 291, 292 (Fla. 1st DCA 2009) (holding a motion for judgment of acquittal should not be granted "unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.") (citing *Rasley v. State*, 878 So. 2d 473, 476 (Fla. 1st DCA 2004)). After viewing the evidence in a light most favorable to the prosecution, the Court concludes that any rational trier of fact could have found Petitioner's actions did not amount to self defense. As such, the state court's denial of this claim was neither contrary to, or an unreasonable application of, federal law, nor was the decision an unreasonable determination of facts in light of the evidence presented. Accordingly, claim one is denied pursuant to § 2254(d).

### B. *Claim Two*

Petitioner claims that the trial court erred when it gave an incomplete self defense jury instruction (Doc. No. 1 at 7). Specifically, Petitioner alleges that the trial court failed to instruct the jury on the "Stand Your Ground Law" codified at section 776.013(3), Florida Statutes. *Id.* Petitioner raised this claim on direct appeal (App. C), and the appellate court rejected the claim (App. E).

The trial court instructed the jury as follows:

> An issue in this case is whether the Defendant acted in self defense. It is a defense to the charged offense to which Dwane Andrew Stewart is charged if the injury to Ernest Caissie or Stephen Miller resulted from the justifiable use of deathly [sic] force.
>
> . . . .
>
> A person is justified in using deadly force if he reasonably believed that such force is necessary to prevent imminent death or great bodily harm to himself or the imminent commission of aggravated battery against himself.
>
> However, the use of deadly force is not justified if you find that Dwane Andre Stewart initially provoked the use of force against himself unless the force asserted toward the defendant was so great that he reasonably believed he was in imminent danger of death or great bodily harm and he had exhausted every reasonable means to escape the danger other than using deadly force on Ernest Caissie and/or Stephen Miller.
>
> (B), in good faith the defendant withdrew from physical contact with Ernest Caissie and/or Stephen Miller and clearly indicated to Ernest Caissie and/or Stephen Miller that he wanted to withdraw and stop the use of deadly force, but Ernest Caissie and/or Stephen Miller continued or resumed the use of force.

(App. B at 569-70). Defense counsel did not object to the jury instructions.

The trial court did not instruct the jury that "[a] person who is not engaged in an unlawful activity and who is attacked in any other place where he . . . has a right to be has no duty to retreat and has the right to stand his . . . ground and meet force with force, including deadly force if he . . . believes it is necessary to do so to prevent death or great bodily harm to himself . . . or to prevent the commission of a forcible felony." § 776.013(3), Fla. Stat (2006). This section is known as the "Stand Your Ground Law."

Because defense counsel did not object to the jury instructions, the instant claim was not preserved for appellate review. *See Harrell v. State*, 894 So. 2d 935, 939-40 (Fla. 2005) (in order to preserve an error for appellate review a party must make a timely, contemporaneous objection, state the legal ground for the objection, and obtain a ruling on that objection). The sole exception to the "contemporaneous objection" requirement is fundamental error. *Id.* at 941. In other words, to be considered on appeal the instant claim had to amount to fundamental error, "reach down into the validity of the trial itself to the extent that the verdict of guilty could not have been obtained without the assistance of the alleged error." *Id.* (quotation omitted).

The failure to instruct the jury on the Stand Your Ground Law did not amount to fundamental error because the failure to give this instruction did not completely negate Petitioner's theory of defense and thus did not deprive Petitioner of a fair trial. *See Graham v. State*, 100 So. 3d 755, 759 (Fla. 1st DCA 2012) ("[w]here the challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error occurs only where a jury instruction is so flawed as to deprive defendants claiming the

10

defense . . . of a fair trial.") (quotation omitted); *Seavey v. State*, 57 So. 3d 978, 980 (Fla. 5th DCA 2011) ("The failure to give a complete or accurate jury instruction constitutes fundamental error if the omission is pertinent or material to what the jury must consider in order to convict."); *Vowels v. State*, 32 So. 3d 720 (Fla. 5th DCA 2010).

Florida courts have held that a criminal defendant is not entitled to a jury instruction on the Stand Your Ground Law when the defendant provoked the attack unless the defendant used deadly force because there was no other means of escape or the defendant withdrew from using force and the alleged victim continued the use of force. *See Darling v. State*, 81 So. 3d 574, 578 (Fla. 3d DCA 2012); *Johnson v. State*, 65 So. 3d 1147 (Fla. 3d DCA 2011), § 776.041(2), Fla. Stat (2006). The evidence at trial indicated that Petitioner provoked the use of deadly force and did not withdraw his use of force. Although Petitioner testified that Caissie and Miller initiated the force against him and he merely used force to protect himself, Petitioner's testimony was substantially impeached by his statement to police in which he admitted that he attacked the victims in order to obtain money or drugs. Petitioner's claim of self defense was extremely weak, and the trial court's failure to instruct the jury on the Stand Your Ground law amounted to harmless error. *See Martinez v. State*, 981 So. 2d 449 (Fla. 2008); *McDuffie v. State*, 72 So. 3d 774, 778 (Fla. 5th DCA 2011) (citing *Chapman*, 386 U.S. at 24 and *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986)).

C.     *Claim Three*

Petitioner contends that the trial court's use of "and/or" in the jury instructions

negated his only defense (Doc. No. 1 at 8).[5] During the trial court's charge to the jury, the court stated the following with respect to the issue of self defense:

> However, the use of deadly force is not justified if you find that Dwane Andre Stewart initially provoked the use of force against himself unless the force asserted toward the defendant was so great that he reasonably believed he was in imminent danger of death or great bodily harm and he had exhausted every reasonable means to escape the danger other than using deadly force on Ernest Caissie **and/or** Stephen Miller.
>
> (B), in good faith the defendant withdrew from physical contact with Ernest Caissie **and/or** Stephen Miller and clearly indicated to Ernest Caissie **and/or** Stephen Miller that he wanted to withdraw and stop the use of deadly force, but Ernest Caissie **and/or** Stephen Miller continued or resumed the use of force.

(App. B at 569-70) (emphasis added); *see* § 776.041(2), Fla. Stat (2006).

Where a claim is merely that a jury instruction was incorrect under state law, federal habeas relief is not available. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). "An error in instructing the jury cannot constitute a basis for habeas relief unless the error so infected the entire trial that the resulting conviction violates due process." *Jacobs v. Singletary*, 952 F.2d 1282, 1290 (11th Cir. 1992) (quotation omitted). "It is not sufficient that the instruction was undesirable, erroneous, or even universally condemned." *Id.* (quotation omitted); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Consequently, alleged errors in a state court's

---

[5]The Court notes that this claim is unexhausted because Petitioner did not raise it on direct appeal. However, Respondents waived the exhaustion and procedural bar grounds in their response (Doc. No. 12). Although the Court may in some circumstances *sua sponte* invoke exhaustion, the Court declines to do so in this case. *See King v. Chase*, 384 F. App'x 972, 974 (11th Cir. 2010) (citing *Esslinger v. Davis*, 44 F.3d 1515, 1524 (11th Cir. 1995) (a "district court may invoke the [exhaustion] bar *sua sponte* [only] where . . . requiring the petitioner to return to state court to exhaust his claims serves an important federal interest")). Therefore, the Court will address this claim on the merits.

jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. *Jones v. Kemp*, 794 F.2d 1536, 1540 (11th Cir. 1986).

Florida courts have held that the use of the "and/or" conjunction in self defense jury instructions when referring to the victims is not objectionable. *See Martin v. State*, No. 1D10-6169, 2013 WL 646231, at *1 n.2 (Fla. 1st DCA Feb. 22, 2013); *Clarke v. State*, 102 So. 3d 763, 766 (Fla. 4th DCA 2012). Accordingly, the trial court's jury instruction did not render Petitioner's trial fundamentally unfair. The state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Claim three is denied.

### D.  Claim Four

Petitioner claims that the trial court erred by admitting his statement at trial (Doc. No. 1 at 10). In support of this claim, Petitioner alleges that Agent Randy Holliday impermissibly promised to help Petitioner with his case in exchange for Petitioner's statement, which rendered his statement involuntary. *Id.*[6]

---

[6]The Court notes that Petitioner did not raise this claim on direct appeal, therefore it is unexhausted. To exhaust a claim, a petitioner must present a claim "'such that a reasonable reader would understand each claim's particular **legal basis** and specific factual foundation.'" *Ogle v. Johnson*, 488 F.3d 1364 (11th Cir. 2007) (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)) (emphasis added). The exhaustion requirement is not satisfied if a petitioner presents new legal theories or factual claims in his federal habeas petition. *See Anderson v. Harless*, 459 U.S. 4, 6-7 (1982) (citing *Picard v. Connor*, 404 U.S. 270 (1971)). Although Petitioner raised a similar claim in his Rule 3.850 motion, that claim was raised as an ineffective assistance of counsel claim and as such, presented a different legal theory than what is at issue here. However, as the Court noted with respect to claim three, Respondents waived exhaustion, and this Court declines to invoke the procedural bar *sua*

The trial court held an evidentiary hearing during Petitioner's Rule 3.850 proceedings on the issue of whether trial counsel was ineffective for failing to move to suppress Petitioner's confession. Defense counsel admitted that he did not object to the introduction of Petitioner's statement at trial, however, he did argue to the jury that Petitioner's statement was involuntary (App. J at 18). Defense counsel also testified that after reviewing the transcript of Petitioner's statement, Agent Randy Holliday ("Holliday") did not induce Petitioner's statement with a promise of help; instead, Holliday's offer of help came at the conclusion of Petitioner's confession. *Id.* at 24. Counsel thus concluded that he had no basis for filing a motion to suppress Petitioner's statement. *Id.*

Petitioner testified that Holliday offered to help him with his criminal case in exchange for his statement. *Id.* at 38. Petitioner stated that it was not until after Holliday made this promise that he decided to make an incriminating statement. *Id.* Holliday testified that he may have told Petitioner that he "wanted to help him out" at the start of the interview. *Id.* at 42. Petitioner's recorded statement was also played during the evidentiary hearing. *Id.* at 56. Petitioner admitted using a knife and stabbing the victims so that he could obtain money or drugs. *Id.* at 82-83, 86-92. Petitioner also stated that the morning after the altercation, the effects of using crack cocaine made him feel like he was "just ready to give up." *Id.* at 94. Holliday responded, "Well, I think you did the right thing, because we can get you some help." *Id.*

In order to admit a criminal defendant's confession at trial, it must be determined

---

*sponte.*

14

that the defendant's statement was voluntarily given to police. *Baker v. State*, 71 So. 3d 802, 814 (Fla. 2011). To establish that a statement is involuntary, there must be a finding of coercive police conduct. *Id.; State v. Carroll*, 103 So. 3d 929, 931 (Fla. 2d DCA 2012) (citation omitted). Thus, the admissibility of a confession depends on (1) whether the police officers engaged in coercive activity and (2) whether that activity was sufficient to overcome the free will of the defendant. *Baker*, 71 So. 3d at 814. A police officer may "promise to make a suspect's cooperation known . . . or advise that . . . 'it would be easier on him' if he cooperated" with police. *Carroll*, 103 So. 3d at 931 (quoting *Blake v. State*, 972 So. 2d 839, 844 (Fla. 2007)). "Promises by law enforcement are objectionable if they establish a quid pro quo bargain for the confession." *Id.* (citing *State v. Walter*, 970 So. 2d 848, 851 (Fla. 2d DCA 2007) ("Where there is an express quid pro quo, such as a promise of protection from prosecution for cooperation, the promise of leniency may render a confession or inculpatory statement involuntary.")).

In this case, Holliday merely made a comment that the police could get Petitioner "some help." To the extent that this offer of "help" referred to Petitioner's criminal case, and not to his drug problem as reading the comment in context suggests, Holliday's statement did not rise to the level of a quid pro quo in exchange for Petitioner's confession. *See Carroll*, 103 So. 3d at 931 (holding the detective's statement that he would "see what it is that we can do to help" did not amount to a promise of leniency that would render the defendant's statement involuntary). Although the absence of an express quid pro quo does not insulate police conduct from claims of undue coercion, *see Ramirez v. State*, 15 So. 3d

852, 856 (Fla. 1st DCA 2009), Holliday's one vague reference after Petitioner had already given an inculpatory statement does not amount to undue coercion. Under the totality of the circumstances, Holliday's statement did not overcome Petitioner's free will because it was made after Petitioner had already confessed. Because Petitioner's statement was not involuntarily made, the trial court did not err by admitting it at trial. Accordingly, this claim is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    *Certificate of Appealability*

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Dwane A. Stewart (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 12th day of June, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-3 6/12
Counsel of Record
Dwane A. Stewart